(July 1, 1915.)

JAMES A. MURRAY, Plaintiff, v. PUBLIC UTILITIES COMMISSION, Defendant.

[150 Pac. 47.]

PUBLIC UTILITIES COMMISSION—REVIEW OF PROCEEDINGS OF—FIXING RATES—SCOPE AND BASIS OF AUTHORITY TO—RULE FOR DETERMINING VALUE OF PUBLIC UTILITY PLANT—PROPER AND IMPROPER ITEMS OF VALUE—DEPRECIATION—VALUE OF WATER RIGHT—FRANCHISE—"GOING CONCERN VALUE"—PERSONAL PROPERTY—ENLARGEMENTS AND EXTENSIONS—WHAT COMMISSION MUST FIND TO JUSTIFY ORDER FOR.

  1.   Under sec. 63 (a) of the public utilities statute (Sess. Laws 1913, p. 286), this court is vested with substantially the same authority in reviewing the proceedings of the Public Utilities Commission as on appeal, and is given ample power to review the orders of the commission and correct any mistakes that may have been made.

(*Idaho Power etc. Co. v. Blomquist*, 26 Ida. 222, 141 Pac. 1083, cited and approved.)

2. When proceeding under sec. 30 (a) of the public utilities statute (Sess. Laws 1913, p. 268), empowering the Public Utilities Commission to fix rates to be charged by the proprietor of a public utility, before lowering an existing rate the commission must first find that it is unjust or unreasonable. On the other hand, before raising an existing rate the commission must first find that it is insufficient. Upon finding that a certain rate is discriminatory, preferential or in any way violative of law, the commission may change it so as to correct or eliminate the objectionable feature. The rate as fixed must be a fair one to the consumers or patrons of the utility, but it must also be sufficient to assure the proprietor of the utility a fair and safe return on his investment, and to encourage rather than discourage the investment of capital in public utility enterprises in this state.

3. In determining the value of a public utility plant for the purpose of fixing rates, the rule of "cost of reproduction less depreciation" is the correct general rule or principle to be applied. In applying this rule the worth of a new plant of equal capacity, efficiency and durability, with proper discount for defects in the old plant and actual depreciation for use, should be the measure of value, rather than the cost of exact duplication.

4. In making deduction for the item of depreciation in appraising the value of a public utility plant, such deduction should be allowed only for actual, tangible depreciation, and not for theoretical, or "accrued depreciation"; and if it be shown that the plant is in good operating condition, and giving on the whole as effective service as a new plant, the question of depreciation may be disregarded.

5. The actual value of a water right as an item in the worth of a public utility plant should be considered and arrived at by the same rule as applied in the case of any other class of property. The value of such water right should be measured by the fair market value of a similar water right in the same locality, if that can be shown. If no market value can be established, then the opinion of competent witnesses as to the actual value may be considered. The fair present value of the water right is the ultimate fact to be found and considered by the commission and the court.

6. *Held,* that the commission erred in refusing to consider the actual present value of the water right of plaintiff as an element in the value of his plant, except to the extent of $2,000 which was paid for it by plaintiff to certain Indians who asserted a claim to the water in question.

7. Evidence on behalf of the proprietor of a public utility to the effect that certain expenses have been incurred in building up

the business may be considered by the commission as one of the elements of value, under the head of "going concern value." The fact that it is a going concern, in successful operation, should be considered in estimating the value of the physical property and assets, but the commission should not attempt to calculate or segregate any specific theoretical value which might attach to the plant or system merely by reason of the fact that it is a going concern.

8. *Held,* that plaintiff has not established his possession of a valid, existing franchise to operate his utility in the city of Pocatello, and that the commission did not err in refusing to consider the matter of the value of the franchise in its decision and order. As to whether the value of a franchise should be considered in fixing value for rate making purposes, *quaere.*

9. *Held,* that if, in constructing a new plant, of equal capacity, efficiency and durability to plaintiff's present plant, it would be reasonably necessary to place or replace mains and hydrant connections at places where paving has been laid, proper allowance should be made therefor, but if such mains and hydrant connections could be located as effectively in other places where paving has not been laid, then no allowance should be made therefor.

10. The personal property of the proprietor of a public utility, such as office furniture, horses, wagons, tools and materials on hand, and the cost of improving ground around a reservoir, are proper items to be considered by the Public Utilities Commission in estimating the value of the plant, if they represent an investment reasonably necessary to the carrying on of the business of the utility and rendering efficient service to the public; otherwise not.

11. In order to justify the Public Utilities Commission in ordering enlargements or extensions of a public utility plant, the commission must be satisfied from the evidence, first, that the existing plant is not reasonably sufficient to render adequate service; second, that the extension or enlargement is within the scope of the original professed undertaking of the proprietor of the utility; third, that after the completion of the enlargement or extensions the proprietor will be assured of a fair return upon his whole legitimate investment; fourth, that the particular enlargements or extensions in question are reasonably necessary to insure reasonably adequate service.

12. *Held,* that in the absence of a showing that the plaintiff in this case has a valid existing franchise to operate his utility in the city of Pocatello, an order by the Public Utilities Commission requiring him to extend and enlarge his plant is not reasonable, and that said commission had no authority to make such order.

Original application in this court for a writ of review of an order of the Public Utilities Commission fixing certain

rates and ordering the extension and enlargement of petitioner's plant.    Order *reversed.*

N. M. Ruick and Hawley & Hawley, for Plaintiff.

In the leading case of *Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418, 42 L. ed. 819, the rule was established by the supreme court of the United States that a public utility is entitled to earn a fair return upon the fair value of the property which it employs in the public service.

The trend of the later decisions, as well as the weightier reasoning, is in favor of allowing the item of value as a "going concern" in estimating the value of a plant for ratemaking purposes. (*Venner v. Urbana Water Works,* 174 Fed. 348; *Des Moines Water Co. v. City of Des Moines,* 192 Fed. 193; *Pioneer Tel. & Tel. Co. v. Westenhaver,* 29 Okl. 429, 118 Pac. 354, 38 L. R. A., N. S., 1209; *Spring Valley Water Works v. San Francisco,* 192 Fed. 137.)

In the case of *Cedar Rapids Gas Light Co. v. City of Cedar Rapids,* 144 Iowa, 426, 138 Am. St. 299, 120 N. W. 966, 48 L. R. A., N. S., 1025, the supreme court of Iowa held that, where a court, in fixing fair value for rate purposes, has taken "into account the fact that the plant was in successful operation," it has given adequate consideration to the "going concern" factor.    Value as a "going concern" is not dependent upon the goodwill of customers.    (*Omaha v. Omaha Water Co.,* 218 U. S. 180, 202, 30 Sup. Ct. 615, 54 L. ed. 991, 48 L. R. A., N. S., 1084; *Des Moines Gas Co. v. City of Des Moines,* 199 Fed. 204, 208.)

The Wisconsin Railroad Commission, recognized as one of the ablest administrative commissions in existence, in *Buhl v. Chicago, Mil. & St. Paul Ry. Co.,* 1 W. R. C. R. 324, decided that cost-of-reproduction-less-depreciation used as a basis of valuation "leaves out of account the value of the plant as a going concern, the business it has built up and the business connections it has made," and consistent with this declaration of principles, that commission has consistently held to the inclusion in the valuation of public utilities

for rate-making purposes of the element of value as a going concern. (*Hill v. Antigo Water Co.*, 3 W. R. C. R. 623.)

Water rights must be included as an element of value in fixing rates. (*San Joaquin & Kings River Canal & Irr. Co. v. Stanislaus Co.*, 233 U. S. 454, 34 Sup. Ct. 652, 58 L. ed. 1041.) *Bothwell v. Consumers' Co.*, 13 Ida. 568, 92 Pac. 533, 24 L. R. A., N. S., 485, in effect decides that if the petitioner herein had no franchise he would have no right to take up new streets or extend his mains. If the petitioner's franchise has been annulled and canceled, all of petitioner's duties and obligations are at an end. (*Public Service Commission v. New York Ry. Co.*, 77 Misc. Rep. 487, 136 N. Y. Supp. 720.)

The right of this court to review the reasonableness of the action of the commission upon all matters was settled in *Idaho Power & Light Co. v. Blomquist*, 26 Ida. 222, 141 Pac. 1083.

If there is a tangible value to a water right which must be taken into consideration in condemnation proceedings, how can such value be eliminated when it comes to considering the entire value of a company for rate-making purposes? It is impossible to conceive that the framers of our state constitution in using the term "public use" would have so used it as to preclude the idea of the party who had acquired a right to such use, not being possessed of a property right with real value attached. (*Home Telephone Co. v. Carthage*, 48 L. R. A., N. S., 1079, note.)

Neither "cost-of-reproduction-new" or "cost-of-reproduction-less-depreciation" should be adopted as the controlling basis for rate purposes. The real question in a matter of this kind is what the fair value for rate purposes would be. (Whitten 1914 Supp., vol. 2, Valuation of Public Service Corporations, 817; *Minnesota Rate Cases (Simpson v. Shepard)*, 230 U. S. 352, 33 Sup. Ct. 729, 57 L. ed. 1511, 48 L. R. A., N. S., 1151.)

Justice Hughes, who decided the Minnesota rate cases, states in substance that the basis of calculation in determining the rate is the fair value of the property used for the con-

venience of the public, but that the ascertainment of fair value is not controlled by artificial rules and is not a matter of formula, but "must be a reasonable judgment having its basis in a proper consideration of all relevant facts." (*Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418, 42 L. ed. 819; *Knoxville v. Knoxville Water Co.,* 212 U. S. 1, 29 Sup. Ct. 148, 53 L. ed. 371.)

J. H. Peterson, Atty. Genl., E. G. Davis, T. C. Coffin and Herbert Wing, Assts., for the Commission.

Our public utility law particularly emphasizes the rule of reason in the very section which confers upon the commission the authority to direct such extensions as are here in question. It gives the commission the authority to direct such extensions as in its opinion, after a full hearing upon the merits of the case, ought reasonably to be made. Clearly, if a given utility is maintaining adequate facilities for the proper rendition of its service to the public, an order of the commission requiring an extension of such facilities would be unreasonable. We must therefore determine what are adequate facilities. (*St. Louis & S. F. R. Co. v. Reynolds,* 26 Okl. 804, 138 Am. St. 1003, 110 Pac. 668; *Seward v. Denver & R. G. Co.,* 17 N. M. 557, 131 Pac. 980, 46 L. R. A., N. S., 242.)

The constitutionality of such an act as we are now considering does not appear to have been successfully challenged in any of the courts of this country. We deem it sufficient to merely cite the court to a few of the cases in which public utilities, or other similar commissions, have exercised authority similar to the authority to direct extensions in the case at bar, and such exercise of authority has been upheld by the courts. (*Munn v. Illinois,* 94 U. S. 113, 24 L. ed. 77; *State v. Kansas City R. R. Co.,* 32 Fed. 722; *North Carolina Corp. Commission v. Atlantic Coast Line R. Co.,* 139 N. C. 126, 51 S. E. 793; *Missouri O. & G. R. Co. v. State,* 29 Okl. 640, 119 Pac. 117; *Dewey v. Atlantic Coast Line R. R. Co.,* 142 N. C. 392, 55 S. E. 292; *Northern Pac. R. R. Co. v. Dustin,* 142 U. S. 492, 12 Sup. Ct. 283, 35 L. ed. 1092; *Grand Trunk*

*West R. R. Co. v. Railroad Commission of Indiana,* 221 U. S. 400, 31 Sup. Ct. 537, 55 L. ed. 786; *Cincinnati etc. R. R. Co. v. Connersville,* 218 U. S. 336, 31 Sup. Ct. 93, 54 L. ed. 1060, 20 Ann. Cas. 1206.)

Budge & Barnard, for City of Pocatello.

"Goodwill" is excluded as an element of value in all valuations where the utility enjoys a monopoly. (*Willcox v. Consolidated Gas Co.,* 212 U. S. 19, 29 Sup. Ct. 192, 53 L. ed. 382, 15 Ann. Cas. 1034, 48 L. R. A., N. S., 1134; Pond on Public Utilities, sec. 474; *Contra Costa Water Co. v. City of Oakland,* 159 Cal. 323, 113 Pac. 668.)

"Going value" should not be considered as distinct from the plant itself, to be appraised at an arbitrary value, as petitioner suggests should be done in this case, but as an inseparable element entering into the entire value of the plant as an operating structure. (*Brunswick & T. Water Dist. v. Maine Water Co.,* 99 Me. 371, 59 Atl. 537, 539; *Spring Valley Waterworks Co. v. San Francisco,* 192 Fed. 137; *National Waterworks Co. v. Kansas City,* 62 Fed. 853, 10 C. C. A. 653, 27 L. R. A. 827; *Cedar Rapids Gas Light Co. v. City of Cedar Rapids,* 144 Iowa, 426, 138 Am. St. 299, 120 N. W. 966, 969, 48 L. R. A., N. S., 1025.)

"The present market value of the plant or its worth as a going concern is the ultimate practical basis for determining the value of the investment upon which to fix a rate which will produce a fair return. The investment is the actual market value of the property which is being used for the public and is useful or necessary at the time to render the service, etc." (Pond on Public Utilities, sec. 484; *Willcox v. Consolidated Gas Co., supra; Cedar Rapids Gas Light Co. v. Cedar Rapids, supra.*)

Petitioner's appropriation of water being for the purposes of sale, he did not own the water right, but only possessed a right to distribute water, and therefore he was not entitled to have his water right included as an element of value. (*Wilterding v. Green,* 4 Ida. 773, 45 Pac. 134; *San Diego*

*Land & Town Co. v. National City,* 74 Fed. 79; *San Joaquin & Kings River Irr. Co. v. Stanislaus County,* 191 Fed. 875.)

The commission did not err in disallowing the item of cost of pavement over mains in working out the valuation on the theory of cost of reproduction. (*Des Moines Gas Co. v. City of Des Moines,* 199 Fed. 204; *Cedar Rapids Gas Light Co. v. Cedar Rapids, supra.*)

Unquestionably, cost of reproduction less depreciation is the correct theory of valuation. (*Knoxville v. Knoxville Water Co.,* 212 U. S. 1, 29 Sup. Ct. 148, 53 L. ed. 371; *Contra Costa Water Co. v. City of Oakland,* 159 Cal. 323, 113 Pac. 668, 677.)

John F. MacLane, as *Amicus Curiae.*

If the exercise of the jurisdiction of the commission to require extensions, additions and improvements is limited and conditioned upon a finding (a) that existing facilities are below the standard of minimum, reasonable adequacy for the service required (*Minneapolis, St. P. etc. R. Co. v. Wisconsin R. R. Commission,* 136 Wis. 146, 116 N. W. 905, 17 L. R. A., N. S., 821); (b) that the new facilities, extensions or addi-·tions which are ordered are within the limits of the profession of public calling made by the utility, that is, within the franchise obligations or other profession or "holding out" of the utility (*Northern Pacific R. Co. v. North Dakota,* 236 U. S. 585, 35 Sup. Ct. 429); (c) that the rates of the utility are sufficient to yield a reasonable return upon the entire investment, including the present and newly ordered facilities (*Smyth v. Ames,* 169 U. S. 466, 546, 18 Sup. Ct. 418, 42 L. ed. 819); (d) that the new facilities or extensions or service will in itself be compensatory (*Northern Pacific R. Co. v. North Dakota, supra,* and *Norfolk & Western R. Co. v. Conley,* 236 U. S. 605, 35 Sup. Ct. 437, then the section may be sustained as constitutional and valid, and the power of the commission in the given case in which such facts are found is lawfully exercised. Unless rates give a fair return upon present reasonable value, the use of the property has been abridged and constitutional rights invaded. (*Willcox v. Consolidated Gas*

*Co.,* 212 U. S. 19, 41, 29 Sup. Ct. 192, 53 L. ed. 382, 15 Ann. Cas. 1034.)

In determining the constitutionality of a legislative or commission schedule, the present value is the thing entitled to protection, whether higher or lower than original cost, and irrespective of how, or the consideration for which, the property of the utility devoted to the public use was acquired. (*San Diego Land & Town Co. v. National City,* 174 U. S. 739, 755, 19 Sup. Ct. 804, 43 L. ed. 1154; *Mathews v. Board of Corp. Commrs.,* 106 Fed. 7, 9; *Consolidated Gas Co. v. Mayer,* 146 Fed. 150, 156; *Consolidated Gas Co. v. New York,* 157 Fed. 849; *Minnesota Rate Cases (Simpson v. Shepard),* 230 U. S. 352, 434, 33 Sup. Ct. 729, 57 L. ed. 1511, 48 L. R. A., N. S., 1151; *Cotting v. Kansas City Stockyards Co.,* 183 U. S. 79, 22 Sup. Ct. 30, 46 L. ed. 92; *San Diego Land & Town Co. v. Jasper,* 189 U. S. 439, 442, 22 Sup. Ct. 571, 47 L. ed. 892; *Cumberland Tel. & Tel. Co. v. City of Louisville,* 187 Fed. 637, 642; *Louisville N. R. Co. v. Railroad Comm.,* 196 Fed. 800, 821; *Des Moines Water Co. v. City of Des Moines,* 192 Fed. 193, 196; *Spring Valley Water Works v. City of San Francisco,* 192 Fed. 137, 145; *Spring Valley Water Co. v. City of San Francisco,* 124 Fed. 574, 592; *Richman v. Consolidated Gas Co.,* 114 App. Div. 216, 100 N. Y. Supp. 81.)

The legislature in adopting the present utility law has indicated a broader policy, and one better calculated to promote stability of investment, efficient service and the investment of private capital, than one which merely stops short of constitutional invasion. (*Minneapolis, St. P. etc. R. Co. v. Wisconsin R. R. Commission, supra; Brunswick & T. Water Dist. v. Maine Water Co.,* 99 Me. 371, 59 Atl. 537; *Louisville & N. R. R. Co. v. Railroad Commission,* 196 Fed. 800; *Pennsylvania R. Co. v. Philadelphia County,* 220 Pa. St. 100, 68 Atl. 676, 15 L. R. A., N. S., 108; *Knoxville v. Knoxville Water Co.,* 212 U. S. 1, 18, 29 Sup. Ct. 148, 53 L. ed. 371; *Idaho Power & Light Co. v. Blomquist,* 26 Ida. 222, 141 Pac. 1083.)

The reproduction cost method of measuring value has frequently had the approval of courts, as well as commissions,

and is the method which by reason of the many uncertainties and difficulties present in attempted measurement of value by investment cost, or stock and bond issues, more certainly produces accuracy of results than either of the latter methods. (*Louisville & Nashville Ry. Co. v. Railroad Commission*, 196 Fed. 800, 820; *Shepard v. Northern Pacific Ry. Co.*, 184 Fed. 765, 803; *Des Moines Water Co. v. City of Des Moines*, 192 Fed. 193, 197; *Kennebec Water Dist. v. City of Waterville*, 97 Me. 185, 54 Atl. 6, 19; *Buell v. Ry. Co.*, 1 W. R. C. R. 324; Whitten on Public Utilities, sec. 639; *Appleton Water Works Co. v. Railroad Commission* (Iowa), 142 N. W. 476, 484; Foster on Valuation of Public Utilities, p. 14.)

A line should be drawn sharply between actual, existing depreciation, and theoretical depreciation in determining value upon which to allow a rate of return. (Floy on "The Valuation of Public Utility Properties," pp. 168–217.)

Costs, both reproduction and the original, for industries where monopoly conditions obtain, represent the rights of the investors and the obligations of the consumers, and furnish equitable bases upon which to adjust the relations as between these two classes. (*Hill et al. v. Antigo Water Co.*, 3 W. R. C. R. 623; *In re Menominee & Marinette Light & Traction Co.*, 3 W. R. C. R. 778; *State Journal Printing Co. v. Madison Gas & Electric Co.*, 4 W. R. C. R. 501; *City of Milwaukee v. Milwaukee Gas Light Co.*, 12 W. R. C. R. No. U-234.)

"Going value," as well as any other so-called intangible element of value, must be embraced in a valuation for rate-making purposes. (*People ex rel. Kings County Lighting Co. v. Wilcox*, 210 N. Y. 479, 104 N. E. 911, 51 L. R. A., N. S., 1; *Public Service Gas Co. v. Board Public Utility Commrs.*, 84 N. J. L. 463, 87 Atl. 651; *Pioneer Telp. & Telg. Co. v. Westenhaver*, 29 Okl. 429, 118 Pac. 354, 38 L. R. A., N. S., 1209; *Bonbright v. Geary*, 210 Fed. 44, 54, 56; *Spring Valley Water Co. v. City of San Francisco*, 192 Fed. 137, 167; *Missouri etc. R. Co. v. Love*, 177 Fed. 493, 496; *Shepard v. Northern Pacific R. Co.*, 184 Fed. 765, 810; *Des Moines Water Co. v. Des Moines*, 192 Fed. 193, 197; *San Diego Land & Town Co. v. Jasper*, 110 Fed. 702, 714; *Pennsylvania*

*Co. v. Philadelphia County*, 220 Pa. St. 100, 68 Atl. 676, 15 L. R. A., N. S., 108; *Milwaukee Elec. R. Co. v. Milwaukee,* 87 Fed. 577, 580, 585; *Monongahela Navigation Co. v. United States,* 148 U. S. 312, 13 Sup. Ct. 622, 37 L. ed. 463; *Underwood Lbr. Co. v. Pelican Boom Co.,* 76 Wis. 76, 84, 45 N. W. 18; *Public Service Gas Co. v. Board of Public Utility Commrs.* (N. J.), 92 Atl. 606.)

The only judicial decision which can be said to be authority for the disallowance of going value in a rate case is *Cedar Rapids Water Company v. City of Cedar Rapids,* 118 Iowa, 234, 91 N. W. 1081, which case on the point in question has been since in effect overruled by *Cedar Rapids Gas Light Co. v. City of Cedar Rapids,* 144 Iowa, 426, 120 N. W. 966–968, 48 L. R. A., N. S., 1025, affirmed in 223 U. S. 655, 32 Sup. Ct. 389, 56 L. ed. 594.

The fallacy of treating ''going value'' or like elements of value as some vague and shadowy thing, separable and distinct from the property itself, rather than an essential constituent of the operating entity has been frequently referred to by the courts.   (*Brunswick & T. Water District v. Maine Water Co.,* 99 Me. 371, 59 Atl. 537, 539; *Spring Valley Water Co. v. City of San Francisco,* 192 Fed. 137, 167; *Appleton Water Works Co. v. Railroad Commission, supra; Washburn v. Washburn Water Works,* 129 Wis. 73, 108 N. W. 194.)

The constitutional rights of the utility demand that any water rights or privileges, even though they may have cost the company nothing, must be included in a valuation for rate-making purposes.   (*San Joaquin etc. Co. v. Stanislaus County,* 233 U. S. 454, 34 Sup. Ct. 652, 58 L. ed. 1041; *Beloit v. Beloit Water etc. Co.,* 7 Wis. R. C. R. 187 (see note, 48 L. R. A., N. S., 1079.)

O. J. Bandelin, Peter Johnson and G. H. Martin, as *Amici Curiae.*

Wherever water has been appropriated and dedicated to the public use, as in this case, the water right acquired by the appropriator becomes as much appurtenant to the public use

and to the property of the individual user as does the water right in case of irrigation become appurtenant to the land. In other words, the appropriator becomes the trustee for the use and benefit of the public to be served. Undoubtedly, as the commission has held in this case, he is entitled to have included in the valuation of his plant for the purpose of fixing rates the actual expenditures made in the purchase of the water rights or in the development thereof, but he is entitled to nothing more in the form of valuation upon which rates shall be paid. The water appropriated belonged to the public.

If the petitioner may capitalize his priority in this water right and capitalize his right to appropriate and deliver the same to the city and its inhabitants in excess of the actual cost thereof, he may capitalize that which was given him and penalize the beneficiaries for whose use and benefit the water is appropriated, diverted and delivered by imposing upon them a tax because of their generosity. (2 Wyman on Public Service Corp., p. 1104.)

See, also, decisions of the California Railroad Commission in Northern California Power Co. case, decided July 13, 1912, and *San Diego Land & Town Co. v. National City,* 74 Fed. 79; the decision of the *Public Service Commission of Nevada v. Nevada-California Power Co.,* decided January 29, 1914, and *San Joaquin etc. Irr. Co. v. Stanislaus County,* 191 Fed. 875. The Pocatello Water Company has no property right in the water right which can be valued for rate-making purposes.

"The right to the use of any of the public waters which have heretofore been or may hereafter be allotted or beneficially applied shall not be considered as being a property right in itself, but such right shall become the complement of, or one of the appurtenances of, the land or other thing to which, through necessity, said water is being applied. . . . . " (Sec. 3240, Rev. Codes.)

A water right cannot lawfully be valued for rate-making purposes in excess of the actual cost thereof. The California courts have held this rule, even under the California law,

in water rate cases.   (*Leavitt v. Lassen Irr. Co.*, 157 Cal. 82, 106 Pac. 404, 29 L. R. A., N. S., 213, at 216; *San Diego Water Co. v. San Diego,* 118 Cal. 556, 62 Am. St. 261, 50 Pac. 633, 38 L. R. A. 460.)

McCARTHY, District Judge.—The petitioner, James A. Murray, as the Pocatello Water Company, made application in June, 1913, to the Public Utilities Commission of the state of Idaho, for an increase of rates to be charged for water supplied to the city of Pocatello and its inhabitants. Upon the hearing the city of Pocatello was permitted to intervene and appeared to contest the application. Hearings were had before the commission at Pocatello and Boise, and a considerable amount of testimony was taken, which was transcribed for the use of the commission, and the same is now on file in this court.

In addition to the testimony introduced at the hearing, the commission employed an engineer, Mr. A. J. Wiley, to investigate conditions and report. On the order of the commission, Mr. W. H. Miller likewise visited Pocatello and spent some time in going over the books of the company.

Upon the testimony thus obtained, the commission rendered a decision on April 14, 1914, which, with orders accompanying it, was duly entered in order book No. 1 of the commission, at page 78. This decision and order are a part of the record in this court, marked exhibit "E."

The case is heard in this court on writ of review issued upon the petition of James A. Murray.

The order of the Public Utilities Commission, in question, directs the petitioner to begin without unreasonable delay and continue without unreasonable interruption the construction of certain extensions and additions to its system or plant. The portion of the order in question is to be found on pages 80 and 81 of exhibit "E," and reads as follows:

"It is hereby ordered, that the petitioner begin without unreasonable delay, and continue without unreasonable interruption, the construction of a pipe-line from Mink creek, of sufficient size and capacity by which all of the present

supply of said creek not now diverted by petitioner may be conveyed from said Mink creek to the reservoir or reservoirs of plaintiff's system situated upon the 'bench' above the city of Pocatello so that the same may be completed during the present year of 1914; the said pipe-line to be, 16 in. riveted steel from Mink creek to Gibson Jack creek, and from Gibson Jack creek to petitioner's upper reservoir at a sufficient distance from the present pipe-lines to be independent of them, and to be equipped with effective blowoff valves and automatic air relief valves, and when completed to have an actual measured capacity of not less than 3.25 second-feet from Mink creek to Gibson Jack creek, and an actual measured capacity of not less than 4.50 second-feet from Gibson Jack creek to the upper reservoir.''

The order also fixes the rate which is to be charged by petitioner for supplying water to the inhabitants of Pocatello. The portion of the order which fixes the rates is to be found at page 84 of exhibit ''E,'' and reads as follows:

''It is further ordered, that petitioner, within 30 days after the date hereof, file with the commission its Supplement No. 1 to its Schedule of Rates now on file with the commission, designating as P. U. C. I. No. 1, the said supplement to amend Item No. 35 on page 1 of said schedule, so as to read:

'' 'House or private residence, 5 rooms or less, $1.00 per month.

'' 'Each additional room, ten cents per month.'

''Immediately upon the filing of said supplement, the said schedule, P. U. C. I. No. 1, and the said supplement, shall become and remain the schedule of rates which the petitioner shall charge and collect for the service therein set forth until further ordered in the premises.''

The main specifications of error relied upon by the petitioner are the following:

First, that in determining the value of the plant as a basis for fixing rates the commission erred in failing to include the following elements: ''going concern,'' franchise, water right, paving over mains and hydrant connections, office fur-

niture, horses, wagons, tools and materials on hand, and cost of improving ground around reservoir:

Second, that the commission erred and exceeded its authority in ordering the extensions and additions to the plant and system of the petitioner.

The section of the so-called public utilities statute (Sess. Laws 1911, p. 268), which confers power upon the commission to fix rates, is as follows:

"Sec. 30.   (a) Whenever the commission, after a hearing had upon its own motion or upon complaint, shall find that the rates, fares, tolls, rentals, charges, or classifications, or any of them, demanded, observed, charged or collected by any public utility for any service or product or commodity, or in connection therewith, including the rates or fares for excursions or commutation tickets, or that the rules, regulations, practices or contracts of any of them, affecting such rates, fares, tolls, rentals, charges, or classifications, or any of them, are unjust, unreasonable, discriminatory or preferential, or in anywise in violation of any provision of law, or that such rates, fares, tolls, rentals, charges, or classifications are insufficient, the commission shall determine the just, reasonable or sufficient rates, fares, tolls, rentals, charges, classifications, rules, regulations, practices, or contracts to be thereafter observed and in force and shall fix the same by order as hereinafter provided, and shall, under such rules and regulations as the commission may prescribe, fix the reasonable maximum rates to be charged for water by any public utility coming within the provisions of this act relating to the sale of water."

Under this section, before lowering a rate the commission must find that it is unjust or unreasonable.   Before raising a rate, the commission must find that it is insufficient.   Upon finding that a rate is discriminatory, preferential, or in anywise in violation of law, the commission may change it so as to correct or eliminate the objectionable feature.   In fixing any rate, the commission must make it just, reasonable and sufficient.   In doing this the commission must consider impartially the rights of both the patrons or consumers and the

proprietor of the utility. The rate fixed must be a fair one to the consumers, but it must also be sufficient to assure the proprietor a fair and safe return on his investment, and to encourage rather than discourage investment in public utility enterprises in the state.

The function of this court in reviewing an order of the commission is defined by the act as follows:

"Sec. 63. (a) [Sess. L. 1913, 286.] . . . . The review shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order or decision under review violates any right of the petitioner under the constitution of the United States or of the state of Idaho and whether the evidence is sufficient to sustain the findings and conclusions of the commission. The findings and conclusions of the commission on questions of fact shall be regarded as *prima facie* just, reasonable and correct. Such questions of fact shall include ultimate facts and the findings and conclusions of the commission on reasonableness and discrimination."

In speaking of the same matter, in the case of *Idaho Power etc. Co. v. Blomquist*, 26 Ida. 222, at 256, 141 Pac. 1083, this court said: "This court is there given substantially the same authority in reviewing such orders as on appeal. It has the same record before it that the commission had and may determine whether the evidence is sufficient to sustain the findings and conclusions of the commission, and in so doing must weigh the evidence. It may decide whether the orders of the board are unlawful or whether they violate a right of the petitioner under the constitution of the United States or the state of Idaho, and whether the evidence is sufficient to sustain the findings and conclusions of the commission. It will thus be seen that this court is given ample power to review the orders of the commission and to correct any mistakes that may have been made."

This court is of the opinion that the rule of cost of reproduction less depreciation, adopted by the commission, is the correct general rule or principle to be applied in this class of cases. However, we believe that in ascertaining values in

this way the worth of a new plant of equal capacity, efficiency and durability, with proper discount for defects in the old, and the actual depreciation for use, should be the measure of value, rather than the cost of exact duplication. So far as the question of depreciation is concerned, we think deduction should be made only for actual, tangible depreciation, and not for theoretical depreciation, sometimes called "accrued depreciation." In other words, if it be demonstrated that the plant is in good operating condition, and giving as good service as a new plant, then the question of depreciation may be entirely disregarded.

So far as the question of value of the plant as a basis for fixing rates is concerned, this court thinks that the most serious question presented is the question as to whether the value of the water right should be considered, and for this reason that question will be considered first. It is admitted in the decision of the commission that the commission refused to place any value upon the water right of the petitioner, or to consider the value of his water right as an element in fixing rates, further than to consider the sum of $2,000, which the evidence shows was paid by petitioner to certain Indians who asserted a claim to the water in question. This court holds that the action of the commission in refusing to consider the value of the water right as an element, further than the payment of this $2,000, was error; following the decision of the supreme court of the United States in *San Joaquin & Kings River Canal & Irr. Co. v. Stanislaus County,* 233 U. S. 454, 34 Sup. Ct. 652, 58 L. ed. 1041, rendered on April 27, 1914. It is only fair to the Public Utilities Commission to note that this decision was rendered after the commission decided the present case.

When the provisions of the constitution and statutes of this state relating to water rights are carefully read together, it is apparent that if one appropriates water for a beneficial use, and then sells, rents or distributes it to others who apply it to such beneficial use, he has a valuable right which is entitled to protection as a property right. (Secs. 1, 2 and 3, art. 15, of the Constitution; sec. 3240, Rev. Codes; *Hard v.*

*Boise City Irr. Co.,* 9 Ida. 589 [76 Pac. 331, 65 L. R. A. 407], especially at pages 599, 600.)    This right has been recognized in almost every adjudication of water rights by the courts of this state; the various ditch companies or carriers have often been parties, and their water rights have been recognized.    To be sure, the person who takes water from the water company or carrier, also acquires a right to the use of it, dependent upon user and payment, but this does not alter the fact that the water company has a right.

The supreme court of the United States, in *San Joaquin etc. Co. v. Stanislaus County, supra,* does not state any rules for ascertaining the value of such a water right.    The value to be considered by the commission is the present, fair value of the water right at the time the rate is fixed.    The original cost is not at all conclusive, if it can be shown that it now has a different value, although the original cost is, as in all cases, an element which may be considered.    The present fair value should be determined by the best evidence of which the nature of the case is susceptible.    It should be measured by the fair market value of a similar water right in the locality, or a similar locality, if such can be established by satisfactory evidence.    If no market value can be established, then the opinion of competent witnesses as to the actual value may be considered.    In this respect the case does not present any exceptional features.    The same rule is applied in the case of any property, real or personal.    The fair market value is the usual standard; but, if it be shown that the property has no market value, then witnesses may testify to actual value, which is, of course, largely a matter of opinion.    Because it is difficult to determine the exact value of a certain kind of property, it does not follow that the owner shall be refused the protection of the law.    The fair present value of the water right is the ultimate fact to be found and considered by the commission and the court.    Exactly what probative or evidentiary facts shall be considered, or what standard of measurement shall be adopted in finding that ultimate fact, will depend largely upon the facts of each case as it arises.    We suggest that the expert engineers employed

by the commission, as well as those testifying for the parties, may render great assistance to the commission in deciding these questions in each case.

Since we hold that the commission erred in this regard, the order of the commission must be reversed, so far as the fixing of rates is concerned. However, we think it best, for the guidance of the commission and parties, to express our views as to the other specifications of error relied upon by petitioner.

If evidence is offered to show that certain expenses have been incurred in building up the business, then this may be considered by the commission as one of the elements under the head of "going concern value." Further than this, we are of the opinion that the commission should not attempt to calculate or segregate any specific theoretical value which attaches to the plant or system of the petitioner, by reason of the fact that it is a going concern, but that this fact should be considered in estimating the value of the physical property and assets of the petitioner. In other words, the question as to the value of petitioner's property and investment should be treated, and viewed, by witnesses and by the commission, in the light of the fact that the petitioner's plant and system are a going concern; that they are in actual, successful operation.

On the record in this case we are of the opinion that it is not demonstrated that petitioner has a valid, existing franchise (See *City of Pocatello v. Murray,* 206 Fed. 72; *Murray v. City of Pocatello,* 214 Fed. 214), and that the commission was, therefore, correct in refusing to consider the matter of a franchise in its decision and order. It not being necessary to decide, for the purposes of this case, whether the value of a valid, existing franchise should be considered in fixing rates, we express no opinion on that question at this time.

If, in constructing a new plant of equal capacity, efficiency and durability, it would be reasonably necessary to place or replace mains and hydrant connections at places where paving has been laid, then, we are of the opinion that, in accordance

with the general rule of valuation which we have adopted, allowance should be made on that account. If, on the other hand, in providing such a plant, it would not be reasonably necessary to place or replace mains and hydrant connections in places where such paving has been laid, but the mains and hydrant connections could be placed in other places to just as good effect, then, we do not think that such allowance should be made.

So far as the office furniture, horses, wagons, tools, materials on hand and cost of improving ground around reservoir are concerned, we think that all of these items should be considered by the commission, if they represent an investment reasonably necessary to the successful carrying on of the petitioner's business and the rendering of his service to the public; otherwise not.

The section of the act (Sess. Laws 1913, chapter 61), which empowers the commission to order extensions or enlargements of a plant, reads as follows:

"Sec. 34. Whenever the commission, after a hearing had upon its own motion or upon complaint, shall find that additions, extensions, repairs, or improvements to or changes in the existing plant, scales, equipment, apparatus, facilities or other physical property of any public utility or of any two or more public utilities ought reasonably to be made, or that a new structure or structures should be erected, to promote the security or convenience of its employees or the public, or in any other way to secure adequate service or facilities, the commission shall make and serve an order directing such additions, extensions, repairs, improvements or changes be made or such structure or structures be erected in the manner and within the time specified in said order. . . . . ''

The use of the word "reasonably" is to be noted. Here again, in determining what is reasonable, the rights of both consumer and proprietor must be considered. In this connection the commission and court must bear in mind the provisions of our state constitution, that no person shall be deprived of his property without due process of law, and that

private property may not be taken for public use until a just compensation shall be paid therefor, as well as the similar provisions in the federal constitution. (Secs. 13 and 14, art. 1, Idaho constitution.) To compel the proprietor of a utility to make enlargements or extensions under such circumstances that he could not make a fair return upon his whole investment, would certainly be depriving him of his property without due process of law. In order to justify the commission in ordering enlargements, the commission should be satisfied from the evidence; first, that the existing plant is not reasonably sufficient to render adequate service (*Washington ex rel. O. R. & N. Co. v. Fairchild*, 224 U. S. 510, 32 Sup. Ct. 535, 56 L. ed. 863); second, that the extension or enlargement is within the scope of the original professed undertaking of the proprietor of the utility (*Northern Pacific R. Co. v. North Dak.*, 236 U. S. 585, 35 Sup. Ct. 429, at 433); third, that after the making of the enlargements or extensions, the owner will be insured a fair return upon his whole investment (*Smyth v. Ames*, 169 U. S. 466–546, 18 Sup. Ct. 418, 42 L. ed. 819); fourth, that the particular enlargements or extensions are reasonably necessary to insure reasonably adequate service (*Northern Pacific R. Co. v. North Dak., supra*, and *Washington ex rel. O. R. & N. Co. v. Fairchild, supra*).

As before pointed out, we are of the opinion that it is not demonstrated upon the record in this case that petitioner has any valid, existing franchise from the city of Pocatello. An extension of the system cannot be ordered unless such an order would be reasonable under the circumstances. Under such circumstances we do not think that an order for the extension and enlargement of the plant is reasonable, and therefore hold that the commission had no authority to make such an order.

The order of the Public Utilities Commission is reversed, and the cause remanded with instructions to the commission to entertain further proceedings in accordance with the views herein expressed.

Sullivan, C. J., and Morgan, J., concur.