(October 17, 1916.)

## CITY OF COEUR D'ALENE, a Municipal Corporation, Plaintiff, v. THE PUBLIC UTILITIES COMMISSION OF THE STATE OF IDAHO, and the INTERSTATE UTILITIES COMPANY, a Corporation, Defendants.

[160 Pac. 751.]

PUBLIC UTILITIES COMMISSION—REVIEW OF PROCEEDINGS—FINDINGS OF COMMISSION—SUFFICIENCY OF EVIDENCE—FIXING OF RATES—VALUATION OF PLANT—AUDITING OF BOOKS—SALARY OF OFFICIALS.

1. *Held,* that the evidence is sufficient to support the finding of the commission to the effect that the rates, tolls, rentals and charges of the defendant company at Coeur d'Alene are not unreasonably high and exorbitant.

2. Where two telephone systems are being consolidated and during the time of the consolidation changes are made and poor service is occasioned by reason of the overhauling of the switchboard and the remodeling of practically the entire central station of the system, the connecting of all lines on one system and the breaking in of new help, and the commission finds that the company will overcome such service difficulties when such changes are completed, and further finds that the company thereafter will render first-class service, this finding will not be disturbed on a review by this court, under the evidence in this case.

3. Where the commission has taken the evidence of the city as to the value of the plant, for rate-making purposes, but denies any deduction from such value on account of depreciation, as suggested by the city's expert witness, and finds "that the plant is in first-class condition and as good as new and is capable of rendering 100% efficient service," such finding will not be disturbed, since it is supported by the evidence.

4. Where, before the consolidation of two telephone company lines, a four-party service had been given, and after the consolidation the four-party service was eliminated and a two-party service established, the commission was justified in refusing to reinstate such four-party service without further proof of the necessity therefor than appears in the record.

Generally upon the question of what constitutes the return of a public service corporation for rate-making purposes, see note in 52 L. R. A., N. S., 15.

5. *Held,* that the commission has full authority, under the provisions of secs. 33 and 34 of the Public Utilities Act (Sess. Laws 1913, p. 269), to prescribe rules and regulations for the performance of any service or the furnishing of any commodity supplied by a public utility, and may upon a proper showing order four-party service discontinued and two-party service installed.

6. Where the value of a utility plant for rate-making purposes has been established and the rate fixed that may be charged for the commodity, and the officers of the company are paid higher salaries than are reasonable, and the excess is paid out of the rate of interest that might properly be paid on the fixed value of the plant, the city has no cause for complaint on account of such excess payment of salaries.

[As to validity of regulation by public service commission fixing minimum rate to be charged by public service corporation, see note in Ann. Cas. 1916A, 933.]

Original proceeding in this court under the Public Utilities Act to review the action of the Public Utilities Commission in fixing rates to be charged for telephone service in Coeur d'Alene City.   The decision of the commission *affirmed.*

Jas. H. Frazier, for Plaintiff.

The commission erred in not deducting the sum of $15,725.50 for actual, tangible depreciation.   (*Murray v. Public Utilities Commn.,* 27 Ida. 603, 150 Pac. 47, P. U. R. 1915F, 436.)

C. H. Craig, for Defendant.

"If it be demonstrated that the plant is in good operating condition, and giving as good service as a new plant, then the question of depreciation may be entirely disregarded." (*Murray v. Public Utilities Commn.,* 27 Ida. 603, 150 Pac. 47, P. U. R. 1915F, 436.)

SULLIVAN, C. J.—This action involves an original application to this court by the city of Coeur d'Alene, a municipal corporation, for a writ of review directed to the Public Utilities Commission of this state, and to the individual members thereof, praying that this court review the order of said com-

mission dismissing the complaint filed with said commission, and the order denying a rehearing in said matter.

The writ was issued as prayed for and the matter is before this court for a determination of the issues involved.

It appears from the record that the Interstate Utilities Company was operating a telephone system in the city of Coeur d'Alene, and the complaint alleges that the rates charged by said company for said utility were unreasonable, exorbitant and excessive, and that by reason of said unreasonable rates a large number of patrons of said telephone company had discontinued their telephones, and the service rendered by said telephone company was very poor and unsatisfactory.

Said public utility answered the complaint, admitting that the service rendered was faulty and inadequate, to a certain extent, but that such condition was due to cramped operating conditions pending the instalation of a new switchboard and other apparatus; that the consolidation of the Interstate Telephone Company with the Pacific Telegraph and Telephone Company was demanded by the city officials of said city; but denied that it was making excessive profit from the exchange in Coeur d'Alene.

Upon the issues made by the pleadings a hearing was had and witnesses on behalf of the parties were examined, and thereafter the defendant Public Utilities Commission made and entered an order holding that the rates, tolls, rentals and charges of said telephone company at Coeur d'Alene were not unreasonable or exorbitant, and dismissed the plaintiff's complaint. Thereafter the city filed an application for a rehearing in said matter, and the Interstate Utilities Company filed its answer denying the allegations and facts set forth in the petition for rehearing, and thereafter a rehearing was denied.

The main assignment of error involves the question of the sufficiency of the evidence to support the decision of the commission.

It is also contended that at the time of the hearing the city desired to have the books of said Interstate Utilities

Company audited, in order that it might present such audit and facts therein contained to said commission for the purpose of adjusting the rates of said company; that at said hearing the city of Coeur d'Alene and the defendant Interstate Utilities Company stipulated that the auditor of said Public Utilities Commission should examine and audit the books of said Interstate Utilities Company, and that such audit and examination should be used by the Public Utilities Commission in adjusting the rates of said defendant company; that said Public Utilities Commission failed to have said books so audited, and decided said matter without auditing said books. It is contended that the city was prejudiced by this action of the Public Utilities Commission and that said commission exceeded its jurisdiction in denying the application of the plaintiff for a rehearing; that the evidence is not sufficient to support the findings of the commission in its holding that said Interstate Utilities Company was not charging unreasonable and exorbitant rates.

It is contended that the evidence introduced on behalf of the city shows and proves that the defendant Interstate Utilities Company was charging unreasonable and exorbitant rates to its telephone patrons in the city. The commission found substantially that "the rates, tolls, rentals and charges of the defendant company at Coeur d'Alene are not unreasonable, high and exorbitant." This finding, under the provisions of sec. 63a of said Public Utilities Act, must be regarded by this court as *prima facie* just, reasonable and correct. We have examined the evidence and find that it is amply sufficient to sustain said finding.

It is contended by the appellant that the evidence shows that the service of the defendant telephone company was very poor and unsatisfactory. The commission found as follows:

"The objections in regard to the service seemed to have been pretty generally overcome at the time of the hearing. The officers of the company seemed to be making an honest effort to overcome all the difficulties in regard to service, and the commission feels that the company will overcome all ser-

vice difficulties, and the commission would not be justified in making any specific order in the premises at the present time. With the local exchange in its present condition, and with proper help, the company should render first-class service.''

The findings of the commission show that the poor service at the time this proceeding was brought was occasioned by reason of the overhauling of the switchboard and the remodeling of practically the entire central station equipment, the connecting of all the lines on one system, and the breaking in of new help. Two systems had been consolidated, and during the time of the consolidation and changes made necessary by it, the service was probably not what it ought to have been under other conditions. We think the evidence sustains this finding of the commission.

It is next contended that the evidence shows the value of said Interstate Utilities Company's plant at said city to be worth less than the sum of $81,251.48, the value as found by the commission. It appears that the commission arrived at those figures after examining the tables submitted by the plaintiff's own expert. In fact, it substantially took the testimony of the city which established that value. The only variation between the figures arrived at by the commission and those of the city's witness Ingersoll appears in the latter's assertion that ''a further deduction should be made for accrued depreciation.'' The commission apparently thoroughly sifted this claim and said ''That the plant is in first-class condition and as good as new, and is capable of rendering one hundred (100) per cent efficient service. That being true, we must find under the rule announced by our supreme court in the case of *Murray v. Public Utilities Commn.*, P. U. R. 1915F, 436, that no deduction should be made in this case for accrued depreciation.'' (27 Ida. 603, 150 Pac. 47.)

The commission further said: ''This commission does not wish to be understood as finding and determining that the valuation of defendant's plant at Coeur d'Alene, as herein assumed, to wit, the sum of $81,251.48, is the true and correct valuation for rate-making purposes. In no event could the

amount be less than that amount, but as hereinbefore stated, for the purposes of this case only, we have assumed that the valuation is the reasonable valuation of this plant for rate-making purposes.''

It is next contended that the evidence introduced on behalf of the city proves that the defendant telephone company was not justified in eliminating a four-party service, and for that reason the commission was unauthorized to make an order permitting the said utilities company to eliminate such service. Upon that point the commission found ''That the defendant company has eliminated this four-party service from each of its other fifteen exchanges in North Idaho. The four-party residence service is no longer used by the Mountain States Telephone & Telegraph Company in southern Idaho. We must conclude that that class of service was discontinued with the object of rendering more efficient service. Under such circumstances this commission does not feel that it would be justified in ordering such service reinstated in Coeur d'Alene without more cogent proof of the necessity therefor.''

It appears that the commission has sanctioned, as a general practice throughout the state, the elimination of more than two-party line service within exchange limits, and the evidence does not show that there was any reason for making an exception in favor of Coeur d'Alene. There is nothing in the contention that the commission had no authority to make an order permitting said telephone company to eliminate such service. Secs. 33 and 34 of the Public Utilities Act, p. 269 (Laws 1913), give the commission the power to prescribe rules and regulations for the performance of any service or the furnishing of any commodity supplied by a public utility.

As to the contention that the city has been prejudiced in said rate hearing by the failure of the commission to examine the books of the defendant company and that injustice has been done to said city for that reason, in attempting to criticise the act of the commission for its failure to have its auditor examine the books of the defendant, counsel seems to have overlooked the fact that the commission based its deci-

sion almost entirely on the figures furnished by the city itself. The commission arrived at the value of the plant for rate-making purposes after examining the tables submitted by the witness Ingersoll and the testimony given by him. That being true, the city should not be permitted to complain of a finding based on its own evidence.

The commission found as follows: "However, this commission does not find it necessary to determine upon a valuation for rate purposes in this case, but for the purposes of this case only, it will assume that the valuation presented by Mr. Ingersoll is the correct appraisal.

"In view of the fact that the defendant has not asked for any increase of rates in this case, and from the further fact that an increase of rates might and probably would result in a decrease of revenues, and for the purpose of demonstrating that the rates now in effect are not excessive, we have accepted the complainant's valuation, that being the lowest possible valuation, under the evidence, that the commission could find."

The city complains that certain officials of the telephone company, and in particular the president, is paid an exorbitant salary. The fact that the telephone company saw fit to pay its officers exorbitant salaries out of the rates it was authorized to charge and only pay a very small per cent or dividend on the value of its plant per annum, is a question in which the city is not interested so long as the salaries and the rate per cent or dividend on the value of the plant do not exceed the rate authorized by the commission to be collected. It appears that the president of the company is the owner of about ninety per cent of the capital stock. That being true, if he desires to pay himself a large salary and take it out of the interest which the company was authorized to collect on the value of its plant, certainly the city could not complain.

We conclude that the commission has passed fully and completely upon all matters of which the city complains, and the commission's findings are fully supported by the evidence. Since we do not find that the commission has exceeded its jurisdiction or violated its authority or infringed any con-

stitutional right of the city, the decision of the commission must be affirmed, and it is so ordered.   Costs awarded to defendants.

Budge, J., concurs.

MORGAN, J., Concurring.—Had the Public Utilities Commission agreed that it would audit, or cause to be audited, the books of the Interstate Utilities Company, and that it would consider the result of the audit as evidence in the case, and had it failed to do so but rendered its decision without making such examination, whereby the plaintiff was precluded from offering proof to establish the facts which such an inspection of the books would have disclosed, as counsel for plaintiff contends, I would be in favor of directing a new trial.   I find, however, that the following is what counsel relies upon as a stipulation:

"After the conclusion of the case, Mr. Frazier stated:

" 'I would like to have the commission audit the books.'

"To which Commissioner Graham answered: 'Before the case is disposed of, if there is any need of it, if Mr. Miller can get around to it we can have him audit the books, or we may get at it in some other way.'

"Commissioner Ramstedt: 'Do you desire the commission, or its auditor, to make an audit of the books?'

"Mr. Frazier: 'Yes, I would like to have that done.'

"Commissioner Ramstedt: 'If the commission should find it necessary to audit the books of the telephone company, why we will have Mr. Miller make an audit.   We will determine that when we come to consider the case.' "

It will be observed that this is not an agreement that the audit would be made unless the commission, upon consideration of the case, deemed that action to be necessary in order to enable it to reach a correct decision.   An examination of the record convinces me that it was fully justified in concluding that an audit of the books was not necessary.

I concur.