BOISE ARTESIAN WATER COMPANY, a Corporation, Appellant, v. THE PUBLIC UTILITIES COMMISSION OF THE STATE OF IDAHO and J. M. THOMPSON, W. H. GIBSON and F. C. GRAVES, Commissioners Thereof, and BOISE CITY, a Municipal Corporation, Intervenor and Adverse Party, Respondents.

[236 Pac. 525.].

PUBLIC UTILITY — ORDER — RIGHT OF APPEAL — VALUATION FOR RATE MAKING—ESTIMATES OF VALUE—METHOD OF VALUAAION—REPRODUCTION VALUE—PRUDENT INVESTMENT THEORY—PROPERTY NOT USED AND USEFUL — OVERHEADS — INTEREST DURING CONSTRUCTION — WORKING CAPITAL—VALUE OF FRANCHISE—GOING CONCERN VALUE —TENTATIVE VALUE OF SUBSEQUENT ADDITIONS.

1. After the commission has acted on a motion for a rehearing thereof an appeal may be taken from an order of the Public

Utilities Commission fixing the value of the property of a utility for rate making purposes.

2. On an appeal from an order of the Public Utilities Commission fixing the value of the property of a utility for rate making purposes it is the duty of the court to determine whether the commission regularly pursued its authority.

3. The property of a public utility should be valued for rate-making purposes as of the date of the inquiry.

4. The commission is not limited in the valuation of the property of a utility for rate making purposes to any one rule or principle of valuation, but should give due weight to evidence of the cost of reproducing a new plant of equal capacity, etc., and, in addition carefully consider all other evidence bearing on cost and value, in all their phases and relations, to the end that the value found to exist will be determined from a careful consideration of all existing facts, conditions and circumstances.

5. A Public Utilities Commission is not justified in determining the value of the property of a public utility solely according to the so-called prudent investment theory.

6. The action of the Public Utilities Commission in refusing to make an allowance, in a valuation proceeding, to cover a steam-pumping plant will not be set aside where it appears that such plant is nonoperative property and no longer necessary to serve the public.

7. If the evidence shows that there is in a public utility a value in excess of the cost or value of the labor and materials entering into its construction, a reasonable amount should be allowed therefor; and where it is not possible to produce better evidence of such excess value, an allowance may be made on the estimates of engineers.

8. The sum necessary for the working capital of a utility is addressed to the sound discretion of the Public Utilities Commission, and in the absence of an abuse of discretion such an allowance will not be set aside.

9. That certain expenses have been incurred in building up the business may be considered by the commission as one of the elements of value. The fact that it is a going concern, in successful operation, should be considered in estimating the value of the physical property and assets, but the commission should not attempt to calculate or segregate any specific theoretical value which might attach to the plant or system merely by reason of the fact that it is a going concern.

10. The amount spent in litigation over a franchise is not conclusive as to the value to be allowed for the franchise in the valuation of a utility for rate-making.

11. A court will not inquire into the validity of an order of a Public Utilities Commission, giving to certain of the property of a utility a tentative value, where the order expressly permits the introduction of further evidence relating to such value, and the commission reserves the right to increase the amount tentatively fixed.

APPEAL from an order of the Public Utilities Commission. *Order set aside.*

Hawley & Hawley, for Appellant.

The commission did not value the appellant's property as of the date of the inquiry. It also failed to recognize or even give fair consideration to reproduction value. (*Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418, 42 L. ed. 819; *Des Moines Water Co. v. City of Des Moines,* 192 Fed. 193; *Cumberland Tel. & Tel. Co. v. City of Louisville,* 187 Fed. 637; *Wilcox v. Consolidated Gas Co.,* 212 U. S. 19, 15 Ann. Cas. 1034, 29 Sup. Ct. 192, 53 L. ed. 382, 48 L. R. A., N. S., 1134; P. U. R. 1924B, 163; *Cedar Rapids Gaslight Co. v. City of Cedar Rapids,* 144 Iowa, 426, 138 Am. St. 299, 120 N. W. 966, 48 L. R. A., N. S., 1025, 223 U. S. 655, 32 Sup. Ct. 389, 56 L. ed. 594; *San Diego Land & Town Co. v. National City,* 174 U. S. 739, 19 Sup. Ct. 804, 43 L. ed. 1154; *San Diego Land & Town Co. v. Jasper,* 189 U. S. 439, 23 Sup. Ct. 571, 48 L. ed. 892; *Spring Valley Waterworks v. San Francisco,* 192 Fed. 137; *Richman v. Consolidated Gas Co.,* 114 App. Div. 216, 100 N. Y. Supp. 81; *Pocatello Water Co. v. Standley,* 7 Ida. 155, 61 Pac. 518; *Denver v. Denver Union Water Co.,* 246 U. S. 178, 38 Sup. Ct. 278, 62 L. ed. 649; *Gloucester Water Supply Co. v. Gloucester,* 179 Mass. 365, 60 N. E. 977; *Kennebec Water District v. Waterville,* 97 Me. 185, 54 Atl. 6, 18, 60 L. R. A. 856; *City of Knoxville v. Knoxville Water Co.,* 212 U. S. 1, 9, 29 Sup. Ct. 148, 53 L. ed. 371; *New York & Queens Gas Co. v. Prendergast,* P. U. R. 1924B, 138; *Georgia Ry. & Power Co. v. Railway Commission,* 262 U. S. 625, 43 Sup. Ct. 680, 67 L. ed. 1144; *Missouri ex rel. S. W. Bell Telephone Co. v. Public Service Commission,* 262 U. S. 276, 43 Sup. Ct. 544, 67 L. ed. 981, P. U. R. 1923C,

193; *Bluefield Water Works & Improvement Co. v. Public Service Commission,* 262 U. S. 679, 43 Sup. Ct. 675, 67 L. ed. 1176, 1181; *Monroe Gaslight & Fuel Co. v. Michigan Public Utilities Commission,* 292 Fed. 139; *Murray v. Public Utilities Commission,* 27 Ida. 603, 150 Pac. 47, L. R. A. 1916F, 756; *City of Coeur d'Alene v. Public Utilities Commission,* 29 Ida. 508, 160 Pac. 751; *Minnesota Rate Cases,* 230 U. S. 352, Ann. Cas. 1916A, 18, 33 Sup. Ct. 729, 57 L. ed. 1511, 48 L. R. A., N. S., 1151; *Elizabethtown Gaslight Co. v. Board of Pub. Utility Commrs.,* 95 N. J. 18, 111 Atl. 729, P. U. R. 1920F, 1001; *Lincoln Gas & E. L. Co. v. Lincoln,* 250 U. S. 256, 39 Sup. Ct. 454, 63 L. ed. 968; *Des Moines Gas Co. v. Des Moines,* 238 U. S. 153, 35 Sup. Ct. 811, 59 L. ed. 1244, P. U. R. 1915D, 577; *Galveston Electric Co. v. Galveston,* 258 U. S. 388, 42 Sup. Ct. 351, 66 L. ed. 678; *Charleston v. Public Service Com.* (W. Va.), 120 S. E. 398, P. U. R. 1924B, 601; *Mobile Gas Co. v. Patterson,* 293 Fed. 208, P. U. R. 1924B, 644; *Foster v. Kellogg Power & Water Co.,* P. U. R. 1923D, 586; *Re Indianapolis Water Co.,* P. U. R. 1924B, 306; *Potomac Electric Power Co. v. Public Utilities Com.,* 276 Fed. 327; *Re Mountain States T. & T. Co.* (Ida.), P. U. R. 1921B, 739; *Re Consumers Co.,* P. U. R. 1923A, 418; *Re Kootenai Power Co.,* P. U. R. 1923A, 764; *Re Idaho Power Co.,* P. U. R. 1923B, 52.)

The commission erred in eliminating the steam-pumping plant, equipment, etc., from the valuation, and this omission was an unwarranted interference with managerial powers. (*Missouri ex rel. Southern Bell Tel. Co. v. Public Service Com.,* 262 U. S. 276–312, 43 Sup. Ct. 544, 67 L. ed. 981; *Havre de Grace & Perryville Bridge Co. v. Towers,* 132 Md. 16, 103 Atl. 319; *Interstate Commerce Com. v. Chicago G. W. R. Co.,* 209 U. S. 108, 28 Sup. Ct. 493, 52 L. ed. 705; *Chicago, M. & St. P. R. R. Co. v. Wisconsin,* 238 U. S. 491, 35 Sup. Ct. 869, 59 L. ed. 1423, L. R. A. 1916A, 1133, P. U. R. 1915D, 706; *Consolidated Gas Co. v. Newton* (N. Y.), P. U. R. 1920F, 483; *Re Kenelworth Co.* (Ill.), P. U. R. 1921D, 95; *Meade Coal Co. v. Appalachian Power Co.* (W. Va.), P. U. R. 1923E, 221, 229; *Lisbon Light & Power Co.*

(N. H.), P. U. R. 1923E, 400; *Re Kennebec Water District* (Me.), P. U. R. 1922D, 545; *Columbus Gaslight Co. v. Public Service Com.* (Ind.), 140 N. E. 538, P. U. R. 1923E, 603; *General Necessities Corp. v. Detroit Edison Co.* (Mich.), P. U. R. 1923E, 845; *Interstate Commerce Com. v. Chicago Great Western Ry. Co.*, 209 U. S. 108, 28 Sup. Ct. 493, 52 L. ed. 705.)

Field and general overhead property values exist in the appellant's property and the proof was ample to justify an allowance therefor. It was manifest error to deny these elements. (*Cedar Rapids Gaslight Co. v. City of Cedar Rapids*, 144 Iowa, 426, 138 Am. St. 299, 120 N. W. 966, 48 L. R. A., N. S., 1025, note, p. 1037; *Milwaukee v. Milwaukee Elec. R. & L. Co.*, 10 R. C. L. 1; *Re Indianapolis Water Co.*, *supra; Monroe Gaslight & Fuel Co. v. Michigan Public Utilities Com.*, 292 Fed. 139, P. U. R. 1923E, 661; *Re Idaho Power Co.*, P. U. R. 1923B, 52; *People v. Public Service Com.*, 202 App. Div. 576, 195 N. Y. Supp. 174, P. U. R. 1922E, 675; *Re Kootenai Power Co., supra; Des Moines Gas Co. v. City of Des Moines, supra; Re Consumers Co., supra; Re Boston & Idaho Company*, 9 P. U. C. I. 70; *Re Grangeville etc. Co.*, P. U. R. 1922D, 519; *Re Mountain States T. & T. Co.*, 8 P. U. C. I. 41; *Re Wood River Power Co.*, P. U. R. 1921B, 531.)

Interest during construction value existed in the appellant's property and the proof was ample to justify an allowance therefor. (*Waynesburg v. Waynesburg Water Co.*, P. U. R. 1922D, 47; *Pioneer Tel. & Tel. Co. v. Westenharer*, 29 Okl. 429, 118 Pac. 354, 38 L. R. A., N. S., 1209; *Hill v. Antigo Water Co.*, 3 Wis. R. C. R. 623; *Re Colorado Springs Light, Heat & Power Co.*, P. U. R. 1917F, 385; *Re Boston & Idaho Gold Dredging Co.* (Ida.), P. U. R. 1921E, 843; *Re Wood River Power Co.* (Ida.), *supra; Re Mountain States Tel. & Tel. Co.* (Ida.), *supra; Re Pocatello Gas & Power Co.* (Ida.), P. U. R. 1923C, 25; *Re Idaho Power Co.* (Ida.), *supra.*)

Proper allowance was not made for the going concern value existing in the appellant's property. (*Re Indianapolis*

*Water Co.* (Ind.), *supra; Des Moines Gas Co. v. Des Moines, supra; Galveston Elec. Co. v. Galveston, supra; Minneapolis v. Rand,* 285 Fed. 818; *Application of Campbell,* Idaho P. U. C., 8th Ann. Rep. 126; *Grangeville Elec. Light & Power Co.,* P. U. R. 1922D, 519; *Re Idaho Power Co., supra; Omaha v. Omaha Water Co.,* 218 U. S. 180, 30 Sup. Ct. 615, 54 L. ed. 991, 48 L. R. A., N. S., 1084, note, p. 1092; *Knoxville v. Knoxville Water Co., supra; Streater Aqueduct Co. v. Smith,* 295 Fed. 385; *City and County of Denver v. Denver Union Water Co.,* 246 U. S. 178, 38 Sup. Ct. 278, 62 L. ed. 649, P. U. R. 1918C, 640.)

The commission ignored as franchise value the cost of establishing the validity of the franchise granted to the company by Boise City. (*Re Mission Company,* P. U. R. 1920C, 52; *Nunn v. Sutter Butte Canal Co.,* P. U. R. 1918E, 563; *Kansas City etc. v. St. Josephs etc. Co.,* P. U. R. 1920B, 37; *Re Cairo Water Co.,* P. U. R. 1921A, 780.)

After the rehearing had been denied by the commission there remained no course for the appellant to adopt, under our statute, barring acceptance of the order, other than to appeal. A similar statute has been interpreted in Washington. (*State ex rel. G. N. R. Co. v. Public Service Com.,* 76 Wash. 625, 137 Pac. 132; *State ex rel. Tacoma Eastern R. Co. v. Public Service Com.,* 102 Wash. 589, 173 Pac. 626; *Willapa Power Co. v. Public Service Com.,* 110 Wash. 193, 188 Pac. 464.)

"The right to review the findings of the commerce commission in a proceeding such as this is limited to the questions whether the commission acted within the scope of its authority, whether the finding is without any foundation in the evidence, or whether a constitutional right has been infringed by such finding." (*Wabash, C. & W. Ry. Co. v. Commerce Commission ex rel. Jefferson S. W. Ry. Co.,* 309 Ill. 412, 141 N. E. 212.)

C. S. Hunter and J. M. Lampert, for Intervenor and Respondent Boise City.

The commission did place a fair value on the appellant's property as of the date of inquiry. (*Brooklyn Borough Gas*

*Co. v. Public Service Com.*, P. U. R. 1918F, 347–335; *Smyth v. Ames*, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. ed. 819; *Cedar Rapids Gas Co. v. City of Cedar Rapids*, 223 U. S. 655, 32 Sup. Ct. 389, 56 L. ed. 594; *Newton v. Consolidated Gas Co.*, 259 U. S. 101, 42 Sup. Ct. 438, 66 L. ed. 538; *Browns Gas & Electric Co. v. Public Service Com.*, P. U. R. 1923A, 255; *Georgia Ry. & Power Co. v. Railroad Com. of Georgia*, 262 U. S. 625, 43 Sup. Ct. 680, 67 L. ed. 1144; *Charleston v. Public Service Com.* (W. Va. App.), 120 S. E. 398; *Petersburg Gas Co. v. Petersburg* (W. Va. App.), 110 S. E. 533; *Pioneer Tel. & Tel. Co. v. Westenhaver*, 29 Okl. 429, 118 Pac. 354, 38 L. R. A., N. S., 1209; *Re Southern Nebraska Power Co.*, P. U. R. 1921C, 678–692.)

It is a necessary function and duty of the utility commission to determine what property owned by a utility is in public service and useful and necessary to the public service. (*Bay State Rate Case* (Mass.), P. U. R. 1916F, 221; *Grafton v. Electric L. & P. Co.* (N. H.), P. U. R. 1916E, 879; *New York Interurban Water Co. v. Mt. Vernon*, 110 Misc. Rep. 281, 180 N. Y. Supp. 304; *Re Indianapolis Water Co.*, P. U. R. 1919A, 448; *Re Long Island Railroad Company*, P. U. R. 1918A, 649; *Knowlton v. Farmington Village Corp.* (Me.), P. U. R. 1918E, 884; *Verona v. Suburban Water Co.* (Pa.), P. U. R. 1920F, 942; *Re Indianapolis Water Co.*, P. U. R. 1924B, 306, 316.)

Proof submitted by appellant as to field and general overheads, and also as to interest during construction, was only an estimate and the order appealed from only tentatively disallowed them, and required appellant to submit additional evidence, if evidence it had; as to these items the order is not final. (*Cedar Rapids Gas L. Co. v. Cedar Rapids*, 144 Iowa, 426, 138 Am. St. 299, 120 N. W. 966, 48 L. R. A., N. S., 1025–1040, note, p. 1041; *People ex rel. v. Public Service Com.*, 202 App. Div. 576, 195 N. Y. Supp. 174.)

A. H. Conner, Attorney General and Herbert Wing, Assistant Attorney General, for Respondent, Public Utilities Commission.

WM. E. LEE, J.—This is an appeal from an order of the Public Utilities Commission. The order was made and filed August 18, 1923, and fixed the value of the property of the Boise Artesian Water Company for rate making purposes. Application for rehearing was thereafter made and denied and the company appealed. Boise City intervened at the hearing below and has appeared in this court. The parties will be referred to as the commission, the company and the city, respectively.

## Right of Appeal.

The appeal is taken in pursuance of chapter 72 of the 1921 Session Laws. In sec. 1 thereof it is provided that " . . . . any party aggrieved may appeal to the Supreme Court from an order of the Public Utilities Commission for the purpose of having the lawfulness of such order inquired into and determined." In sec. 3 of said chapter it is further provided: " . . . . the review on appeal shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order appealed from violates any right of the appellant under the constitution of the United States or of the state of Idaho. . . . . "

In pursuance of the foregoing statute the company had a right to appeal from the order of the commission fixing the value of its property for rate making. The appeal having been taken, it is the duty of this court to entertain the appeal, and determine whether the commission, in fixing a valuation of the company's property for rate making purposes, has regularly pursued its authority. It is this court's duty also to determine whether the order violates any constitutional right of the company when any such question is presented for consideration. Since the commission has not fixed the rate it will permit the company to charge for its service, and we cannot presume that a confiscatory rate will be fixed, we are of the opinion that there is no occasion to pass on the constitutional questions the company has argued.

### Estimates of Value.

In addition to the testimony of a number of persons, the commission had before it five reports or estimates of the value of the property of the utility. The company's historical cost was not a true historical cost. It is more accurate to say that it was reproduction cost based largely on an estimate of the cost of labor and material as they were applied in the piecemeal construction of the system. A study of the record will convince one that the engineer who prepared the report was more than willing to disregard actual records of the company and substitute his estimates. The company's reproduction cost estimate is what its title indicates. It is an estimate of the cost of reproducing the property, and it was the only estimate that purported to be based on prices and conditions as of May 31, 1921. "Kopelman No. 1" is a reproduction estimate based on an average of prices from 1913–1916. "Kopelman No. 2" is a reproduction cost of the property as of December 31, 1916, at prices as they averaged over 1913–1916. To this was added subsequent additions at actual cost. Kopelman was the commission's engineer. The city presented what it termed the "Franklin Value," in which certain property was not included, as not being used and useful. This estimate of the value of the physical properties used and useful in the public service was said to be based on a fair average value or cost during the period of 1916 with all field and general overheads.

The total value fixed in the respective reports or estimates of physical properties was:

| | |
|---|---|
| Company Historical Cost | $617,710.00 |
| Company Reproduction Cost | 983,419.00 |
| Kopelman No. 1 | 636,133.00 |
| Kopelman No. 2 | 652,117.00 |
| Franklin | 611,747.23 |

The commission's value of the physical properties was fixed as $598,498.25, to which were added certain other items.

## Method of Valuation.

The first and probably the principal contention of the company is that the commission did not value its property as of the date of the inquiry and that it failed to recognize or even give fair consideration to the cost of reproduction. A finding of the fair value of the property of a public utility, used and useful in the service of the public, is authorized by law (C. S., sec. 2471); and is a necessary requisite to the fixing of a rate that will pay the necessary operating expenses of the utility, take care of depreciation and pay a fair return on the value of the property devoted to public use, as well as protect the public from paying unreasonable charges for the service furnished.

The determination of the value of the property of a utility is not without difficulty, and no rule should be laid down that would prevent the commission from giving due consideration to all evidence relating to value, and from finding a fair and just value based on all the evidence. To say that the value of the property of a utility is to be determined solely by subtracting depreciation from what the property originally cost would not be fair either to the utility or to the public. The property may have cost too much. It may have been purchased at an inflated value. On the other hand it may be too low a value in view of the advance in prices. By some, the theory has been advanced that value should be determined from outstanding stocks and bonds, and such a method might be proper in some cases, but in view of the fact that little restriction has heretofore been generally exercised to prevent the issue of "watered stock," it would be eminently unfair to require users to pay a return on value based solely on outstanding stocks and bonds. The Michigan commission devised the prudent investment theory (P. U. R. 1923E, 661, 292 Fed. 139), but a federal district judge enjoined the rates fixed by the commission. (*Monroe Gaslight & Fuel Co. v. Michigan Public Utilities Com. et al.,* 292 Fed. 139.)    In *Missouri ex rel. S. W. Bell Telephone Co. v. Public Service Com.,* 262 U. S. 276, 43 Sup. Ct. 544, 67 L. ed. 981, 31 A. L. R. 807, Mr. Justice Brandeis advanced the

prudent investment theory, in which Mr. Justice Holmes concurred; and, however convincing his argument may seem, Judge Brandeis was unable to prevail on the supreme court of the United States to concur in his view. Many of the courts and commissions have approved valuations based on cost of reproduction less depreciation, as was done by this court in *Murray v. Public Utilities Com.*, 27 Ida. 603, 150 Pac. 47, L. R. A. 1916F, 756.

Practically and from an administrative standpoint the valuation of the property of a utility, for rate-making purposes, must be more or less permanent, and cannot be raised or lowered in accordance with the ephemeral rise and fall of prices and values. The commission must so value the property of a utility as to cause it to receive a fair return for the use of its property, and if this is done there should be no cause for complaint. Of course, it should be borne in mind that value, as here used, does not strictly mean market value or sale value; for the value of the property of a utility for rate-making purposes must be measured somewhat by the use to which it is devoted. The obligation on the part of the user is to pay a reasonable and just compensation for the service so that the sum total paid by all the users of the service will be sufficient to pay necessary and reasonable operating charges, depreciation, and a reasonable return on the fair value of the property of the utility, used and useful. A utility cannot require that a scale of high prices shall be the sole basis for determining value, and the public cannot expect that present high prices shall be wholly ignored in the process of valuation.

"What the company is entitled to ask is a fair return upon the value of that which it employs for the public convenience. On the other hand, what the public is entitled to demand is that no more be exacted from it . . . . than the services rendered by it are reasonably worth." (*Smyth v. Ames,* 169 U. S. 547, 18 Sup. Ct. 434, 42 L. ed. 849.)

While the question of the valuation of the property of utilities has been the subject of extended study by courts, commissions and writers, no one rule or theory has been uni-

formly adopted as the correct rule, to the exclusion of all others, to fit all cases and changing conditions. Since the object to be attained in all valuation proceedings is the fair value of the property of the utility, used and useful, in the service to which it is devoted, it would appear to be a mistake to limit a commission, in ascertaining and determining the ultimate fact, to any one rule or theory. It would be much better, in view of the practical problems facing the commission, in every valuation proceeding, to require it to give fair consideration to all evidence relating to value, to the end that the final judgment of the commission may be arrived at from a consideration of all the evidence available. We, therefore, lay it down as our view that, in valuing the property of a utility, the commission should require evidence relating to the cost of reproduction or replacement, actual cost, depreciation, earning capacity, present service condition, investment, the service furnished and any and all other relevant evidence, so that its final judgment will be based on evidence bearing on cost and value in all their phases and relations, and the value found to exist will be determined from a careful consideration of all relevant facts, conditions and circumstances. We do not understand that this view can be said to be out of harmony with the logical conclusion to be drawn from the decisions of the supreme court of the United States on the question of utility valuation. It is supported by *Smyth v. Ames, supra,* and while that decision has been criticised it has not been overruled. In that case it was said:

" . . . . that the basis of all calculations as to the reasonableness of rates . . . . must be the fair value of the property being used . . . . for the convenience of the public. And in order to ascertain that value, the original cost of construction, the amount expended in permanent improvements, the amount and market value of its bonds and stock, the present as compared with the original cost of construction, the probable earning capacity of the property under particular rates prescribed by statute, and the sum required to meet operating expenses, are all matters for consideration,

and are to be given such weight as may be just and right in each case.''

While, therefore, it cannot be contended that the utility owner may rightfully demand that any one rule or principle for determining the value of his property shall be adopted, he is entitled to have evidence of reproduction cost considered and given such weight as may be just and proper in view of all the other facts and circumstances. ''So, even if we tried to use the reproduction new cost less depreciation as a measure of value, we are without the depreciation measure,'' said the commission in the order from which the appeal is taken. Finding the then present fair value of the property of the utility was the object of the hearing. The commission had power to require the production of the necessary evidence. It could have been required of the company or of its own engineering force. As has been stated by it heretofore,'' . . . . the work of the commission is primarily practical,'' and the commission should have required the production and submission of all necessary evidence to better enable it to reach a proper determination of the question before it. It is apparent, from a study of its order, that the commission failed to give sufficient or proper consideration to reproduction cost in determining the value of the property of the company; for, in its order, the commission stated:

''For this property we believe that the investment reasonably and prudently made, appreciated in the case of property installed prior to 1917 to the price levels averaged over the period of 1913 to 1916, inclusive, and giving lands their valuation date value, is fair, and that the reasonable and prudent investment made for property installed in 1917 and thereafter, measured by the actual amount required is fair for such property, and this we adopt generally as a basis for the measurement of the physical property other than lands.''

It may be laid down as a well-settled rule that the value of the property of a utility is to be determined as of the date of the inquiry, in this case as of May 31, 1921. (*Wilcox v.*

*Consolidated Gas Co.*, 212 U. S. 19, 15 Ann. Cas. 1034, 29 Sup. Ct. 192, 53 L. ed. 382, 48 L. R. A., N. S., 1134; *Southwestern Bell Case, supra; Bluefield Waterworks, etc., v. Public Utilities Com.*, 262 U. S. 679, 43 Sup. Ct. 675, 67 L. ed. 1176.) In *Potomac Electric Power Co. et al. v. Public Utilities Commission of the District of Columbia*, 276 Fed. 227, 51 App. D. C. 77, the court of appeals of the District of Columbia had before it an order fixing the value of the property of the utility for rate making as of December 31, 1916. The commission had found the fair value of the property at prices of July 1, 1914, and added thereto the actual cost of improvements subsequently made. This was held to be error. The court said:

"It has been ruled many times that there must be a fair return to a public utility 'upon the reasonable value of the property at the time it is being used for the public' (citing cases) and we are of the view, therefore, that the present cost of reproduction is one of the necessary elements for consideration, along with other relevant facts, in fixing the fair and reasonable value of the property."

An examination of that portion of the order hereinbefore quoted will disclose that the commission measured the value of all property, except land, put into the system prior to 1917, by an average of prices prevailing from 1913–1916 inclusive. It affirmatively appears, therefore, that property installed prior to 1917 was not given a value as of May 31, 1921. The same may be said with respect to property installed between 1917 and May 31, 1921, for that was measured by the "prudent investment made . . . . for the actual amount required." From the great mass of evidence before us there can be little, if any, doubt, that prices of both labor and materials, on May 31, 1921, were generally higher than they had been theretofore. From what has been said it follows that it is our conclusion that in giving the property installed prior to 1917 a value according to "price levels averaged over the period of from 1913 to 1916 inclusive . . . . " and "allowing the reasonable and prudent investment for property installed in 1917 and thereafter (prior to the hear-

ing), measured by the actual amount required,'' the commission was in error. The company was entitled to have its property given its then present value.

## Property not Used and Useful.

The company complains of the action of the commission in refusing to include the value of a steam-pumping plant in the total value of its property. The historical cost of the steam-pumping plant was given as $12,792 and its reproduction cost was estimated to be $20,796. The steam-pumping plant was installed in 1895 and was used by the company in pumping water through its system until 1907, when an electric pumping plant was installed. The evidence shows that the pumping of water by electricity is more economical. Shortly after the instalation of the electric pumping plant a switchboard was burned out and the steam plant was used for a few days; and while the steam plant has been at times tested and operated for experimental purposes, it is safe to say that it has not been used for the purpose of pumping water to the users of the system since 1907. The commission found that the steam-pumping plant ''was not reasonably necessary .... to assure a power supply, or to assure an adequate pumping plant, or to guard against the effect of unusual high water upon the electric pumping plant, and that the steam plant is in fact nonoperative property.''

Whether the steam plant was nonoperative property was purely a question of fact. We conclude that the finding of the commission is supported by the evidence. Where the evidence shows that property is nonoperative it surely cannot be the law that the commission must include the value of such property with that which is used and useful because to do otherwise would constitute an interference with the managerial functions of the company. Whatever powers or functions may be possessed by the owners or managers of a utility, which may not be interfered with by a commission, users cannot be required to pay a return on property which the commission has found on sufficient evidence is nonoperative. To hold otherwise would make a farce of utility regu-

lation. Appellant insists that the retention of the steam plant is necessary for stand-by service. The decision of the commission would indicate either that stand-by service is not necessary or that the steam plant is not adequate for that purpose. Adequacy of service and the necessity for stand-by service are questions peculiarly within the province of the commission. To justify this court in setting aside this finding, the evidence would have to be strong and persuasive that the commission had abused its discretion. The evidence here is not of that character. Whether a sufficient allowance has heretofore been made to cover the retirement of this property or will be made in the rate to be fixed by the commission is not before us.

### Field and General Overheads.

The commission failed to include in the total value any sum for field and general overheads. Other than the estimates of the engineers, and they all say such a value exists in the property, there was no evidence that, in the construction of the system, any definite sums had been actually expended for overheads. The commission refused to allow any amount for such overheads, on the ground that in order to justify an allowance for overheads it must be established that the amount claimed is reasonable and that it had actually been paid as an ownership matter. An unreasonable amount should certainly never be allowed for overheads. Appellant says, ''That it was actually paid, as an ownership matter . . . . is not controlling.''

The supreme court of the United States in the very late decision in *Ohio Utilities Co. v. Public Utilities Commission of Ohio,* 267 U. S. 359, 45 Sup. Ct. 259, 69 L. Ed. 293, in speaking of a reduction made by the commission in items covering expense of preliminary organization, said:

''The item of $5,000 seems to have been rejected upon the ground that there was no proof of actual expenditure. Reproduction value, however, is not a matter of outlay, but of estimate, and should include a reasonable allowance for organization and other overhead charges that necessarily

40 Idaho—45

would be incurred in reproducing the utility. In estimating what reasonably would be required for such purpose, proof of actual expenditures originally made, while it would be helpful, is not indispensable. . . . . That such expenditures in a substantial amount would necessarily be made in reproducing the utility is clear; it is not suggested that the estimate of the engineers is excessive or unfairly made; and the rejection of the entire amount cannot be regarded as otherwise than arbitrary.''

The city concedes that such a value is inherent in a utility property and that while an allowance for overheads should be made in fixing a value for condemnation, none should be made in fixing a value for rate making. The distinction does not appeal to us. In both situations it is the *property* of the company with respect to which a value is to be determined. The public can no more take private property without just compensation, by fixing too low a value for rate making, than by fixing too low a value for condemnation. As was said by Mr. Justice Hughes, in the *Minnesota Rate Case*, 230 U. S. 352, Ann. Cas. 1916A, 18, 33 Sup. Ct. 729, 57 L. ed. 1511, 48 L. R. A., N. S., 1151:

''The property is held in private ownership, and it is that property, and not the original cost of it, of which the owner may not be deprived without due process of law.''

The value of a property is not necessarily its cost. Even though constructed economically, the construction cost is a mere evidence of value. The fact, even if it be admitted, that the system was largely built from profits would not deprive the owner of his right to have the property given its present fair value. And ordinarily even though the system was built up gradually and out of the profits of the company, and conceding that there is no evidence that any sum was ever actually expended for overheads, we do know that there is a value in the completed property in addition to the mere naked cost of labor and materials necessarily used in its construction. The unsatisfactory nature of theoretical estimates may be conceded, but that better evidence is unobtainable in some cases there can be no doubt. C. S., sec.

2444, would seem to require that actual costs be produced where evidence thereof is available. Counsel do not agree as to whether evidence of actual expenditures for overheads is available. Despite the fact that courts and commissions throughout the country, including our own commission, have allowed for overheads on theoretical estimates, it would not be proper to require an allowance of value for overheads on mere estimates where evidence of actual expenditures therefor is available. It is our conclusion, from what has been said, that when the evidence shows that there is in a utility property such a value in excess of the cost of labor and material, a reasonable amount should be allowed therefor, and where it is not possible to produce better evidence, such an allowance may be made on the estimates of engineers.

However, it might be well to suggest that in our judgment an estimate by an engineer as to the cost or value of the property of a utility, or as to any of the component parts going to make up the total cost or value, is not necessarily conclusive. No more weight should be given such an estimate than is justified by the evidence sustaining the items included in the estimate. While in this case there is no controversy relating to the numerical inventory of the physical property, with respect to the cost and value of many of the items involved, etc., there is a substantial conflict in the evidence. In saying, therefore, that the commission should not have wholly disregarded the estimates of engineers, in fixing the value of the property of this utility, we do not desire to be understood as holding that the commission is required to do more than give such fair consideration and due weight to estimates than to all other evidence relating to the value of the property. The city contends that the managers, engineers, superintendents, etc., for whose services the company claims an amount should be included in the item of overheads, were paid out of the operation account, and that to allow for such services under the item for overheads would amount to "doubling up." We are unable to determine, from the great mass of testimony, exhibits and data in this record, that this contention is well founded.

Naturally such alleged "doubling up" should not be permitted; and despite the fact that the company is entitled to the benefit of all elements of value, if it should appear that the users have paid for any of the items of overheads sought to be included in the total valuation, such fact should properly be taken into consideration by the commission in its rate hearing. Fictitious values should at all times be disregarded, and such a value should be found of the property used and useful as will, by the adoption of a fair rate, permit the company a just compensation, and require of the users no greater payment than the service rendered is reasonably worth.

### Interest During Construction.

That, during the construction of such a property, there is a period during which certain funds of the owner are not producing a return cannot be successfully contradicted. In arriving at the value of the property of a public utility, it is proper to include as an element thereof a sum for interest during construction. That it is difficult to determine the reasonable amount that should be allowed is no reason for a failure to make any allowance whatever. Such an allowance has heretofore been made by our commission, as well as other commissions, and we believe that it is a general policy to allow an amount for interest during construction. What we have said under the subject of "Overheads" also applies to this item.

### Working Capital.

The commission made an allowance for working capital of $24,000 and appellant contends that this amount is at least $10,000 under its requirements. There does not appear to be any well-defined rule by which the amount necessary for working capital can be ascertained. The requirements differ with different utilities. The amount that should be required for the working capital of a utility is peculiarly within the province of the commission and a study of the past and present requirements of the company should enable the commission to fix a proper amount therefor. Appellant

suggests that it is possible that a typographical error was made by the commission in writing the amount $24,000 instead of $34,000. That such an error occurred, in view of what was said by the commission in its order bearing on the question, is within the range of possibilities. However, in view of all the evidence we are not prepared to say that the finding of the commission is not sustained. The company is entitled to a sufficient allowance to meet its requirements in this respect; and, in view of a possible doubt as to whether such an error was made, a re-examination of the question should be made by the commission and such an amount allowed as may be found necessary.

### Going Concern Value.

In addition to the allowances of value represented by the terms "business" and "property development," the company contends that, in arriving at the value of its property, the commission failed to make any allowance to cover the going concern value of the utility, and that the system, being in successful operation, has a going concern value that should be included in the total value found to exist. Because of the condition of this water system, as found by the commission, we believe it has an additional value because of the fact that it is a successful going concern. Going concern value has been treated differently by different courts; it has been allowed in some cases and denied in others. For the decision of the question we are not without authority. In *Murray v. Public Utilities Com., supra,* the court said:

"If evidence is offered to show that certain expenses have been incurred in building up the business, then this may be considered by the commission as one of the elements under the head of 'going concern value.' Further than this, we are of the opinion that the commission should not attempt to calculate or segregate any specific theoretical value which attaches to the plant or system of the petitioner, by reason of the fact that it is a going concern, but that this fact should be considered in estimating the value of the physical property and assets of the petitioner. In other words, the

question as to the value of petitioner's property and investment should be treated, and viewed, by witnesses and by the commission, in the light of the fact that the petitioner's plant and system are a going concern; that they are in actual, successful operation.''

What the company has a right to demand is that its property, devoted to the service of supplying water to the inhabitants of Boise, be given such a fair value that a reasonable rate of payment by the users, based on such fair value, will give the company a fair return for the use of its property. In determining that fair value, the commission must keep in mind the fact that the utility is a going concern, and that it is in successful operation. If this is done, there will be, in the total value found to exist in the property of the utility, an allowance for going concern value. Having held that the property of the company was not given its present fair value, we will not attempt to determine whether, in estimating the value of the physical property of the company, the fact that the utility was a successful going concern was taken into consideration by the commission. The duty of the commission in this respect, however, is clearly set forth in the Murray case.

### Franchise Value.

Under the item of franchise value the appellant claims that the commission ignored as franchise value the cost of establishing the validity of the franchises granted to the company by the city, and that it should have been allowed the total sum paid by it to establish the validity of the franchise under which it is operating. It seems that some years ago certain litigation took place between the company and Boise City over two franchises, the franchise under which this company is operating and the franchise under which the Hot Water Company, then in some manner connected with this company, is now operating. The Hot Water Company is not under utility regulation. The commission reached the conclusion that approximately one-half of the amount expended for attorneys' fees should be allowed to

this company. The question of the propriety of an allowance for the value of the franchise is not presented for our consideration, and we are restricted to a determination of whether the commission should have allowed the full sum spent in litigation rather than a part thereof. What the company then paid out would appear to have been admissible in evidence as going to show the value of the franchise or, as is claimed, a cost of business development. The value of the franchise is not necessarily determined by its cost. In view of the evidence, considered as an expense of business development, we are of the opinion that the allowance by the commission of practically one-half of the amount spent for attorneys' fees in the litigation is sufficient.

## Tentative Value of Subsequent Additions.

The company contends that it was not allowed the fair value of additions which it made to its property between May 31, 1921, and December 31, 1922. On this item the commission did not make a final order. The commission stated that it had not been favored with the facts and details necessary to a determination of a proper allowance for such additions; and that as a part of the rate hearing it would require a "study to be made . . . . so that the exact amount can be finally determined and properly charged." The company may yet furnish further evidence on the subject, and the commission has reserved the right to change the tentative valuation of this item. Until a final order is made by the commission in this respect, it would not be proper for this court to pass upon the temporary allowance.

The order appealed from is set aside.

William A. Lee, C. J., Budge, Givens and Taylor, JJ., concur.