207 P.2d 1028

Application of LEWISTON GRAIN GROWERS, Inc., et al.

LEWISTON GRAIN GROWERS, Inc., et al. v. ROOKE et al.

No. 7513.

Supreme Court of Idaho.

June 21, 1949.

Maurice H. Greene, Boise, V. R. Clements, Lewiston, for appellants.

Robert E. Smylie, Attorney General, Don J. McClenahan, Asst. Attorney General, for Public Utilities Commission.

John L. Rooke, John J. Hanley, Cottonwood, W. J. Crea, Fenn, pro sese.

TAYLOR, Justice.

The appellants, being eighteen warehouse companies operating a number of warehouses in the northern part of the state, under date of February 10, 1948, petitioned the Public Utilities Commission of Idaho to amend existing schedule of warehouse rates by increasing the handling charges on grains, peas and seeds from $1.00 to $1.25 per ton, with storage charges at 15¢ per ton per month or fraction thereof after ten days free storage. The storage fixed by the existing rates being 15¢ per ton per month for wheat and 10¢ per ton per month for peas, both following a free storage period of 30 days.

A hearing was had before the Commission on May 18, 1948, at which nine warehouse representatives testified in support of the petitions and four farmers testified in opposition. On June 21, 1948, the Commission made its findings and entered an order granting the petitions to the extent of increasing the storage rate on peas from 10¢ to 15¢ per ton per month. As to the other increases asked, the Commission found in substance that each of the applicants has a different system of accounting; that the Commission is unable to determine that any system of accounting shown by the evidence fully reflects and gives a suitable account of the business transactions of the applicants, or that the practice and procedure of any one of the applicants is acceptable for a suitable and proper system of accounting for warehouses or as a pattern or guide for all the warehouses in the state; and that a suitable and proper uniform system of accounting should be adopted and followed so that rates may be made upon a proper basis, and that the Commission should forthwith establish such a uniform system of accounting for the warehouses within the state. Upon this finding the Commission concluded that further action with reference to rates be held in abeyance and the cause be held open until the establishment of a uniform system of accounting, and an order was entered that the Commission proceed to promulgate and establish such uniform system.

Appellants thereafter petitioned the Commission for a rehearing. By its order dated August 20, 1948, rehearing was denied.

In addition to the findings supporting its original order, in denying the rehearing, the Commission found as follows:

"It is apparent from the record herein that a large majority of the persons who are declared to be warehousemen are engaged in divers forms of business and merchandising not within the scope of the Commission's jurisdiction.

"The warehousemen, in conducting these divers forms of business and merchandising which are beyond the scope of the Commission's jurisdiction, are utilizing warehouse plant, equipment, and labor. The devoting of a property to public use with rates based on such public use precludes any use other than public. If the owner or any other person makes use of the plant, facilities, and personnel, in other than public use, such private use should bear its portion of the costs to maintain and operate the business. To determine what proportion of the cost of maintenance and operation should be considered, a separation as between the different uses must be made.

"For many years, the practice of warehousemen has been not to properly segregate and allocate expenses and revenues incident to public uses on the one hand and private uses on the other. This practice has seriously handicapped this Commission in its effort to determine fair and reasonable rates. Whether or not the rates are fair and reasonable, the Commission cannot accurately determine until expenses and revenues incident to public use are segregated from the expenses and revenue incident to private use. To this end, the Commission has ordered the establishment of a uniform system of accounting and compliance with Section 59–405, Idaho Code Annotated. A uniform system of accounting will enable the Commission to determine what allocations to public use and to private use are proper."

■ Although not raised by respondents, the question is presented as to whether or not the orders appealed from are final orders and appealable, or whether they are intermediate or interlocutory orders in nature, and not appealable, within the rule announced in Capital Water Company v. Public Utilities Commission, 41 Idaho 19, 237 P. 423. For reasons hereinafter stated, we regard the orders herein considered as in effect final and appealable.

Subject to the limitations of sec. 1, Art. 2, of our State Constitution, the legislature has provided that, " * * * The review on appeal shall not be extended further than to determine whether the commission has regularly pursued its authority, including a determination of whether the order appealed from violates any right of the appellant under the constitution of the United States or of the state of Idaho. * * *" Sec. 61-629, I.C.

The appellants contend that the Commission has not regularly pursued its authority, and that its orders violate their rights under the due process clauses of the federal,

14th Amend., and state, Art. 1, sec. 13, constitutions. More specifically they contend that the Commission, by withholding action upon their petitions for increased rates until the establishment of a uniform system of accounting, requires them, in the meantime, to continue to operate under rates which are unfair and confiscatory in that the evidence which they presented to the Commission shows that they are operating at a loss.

In support of the Commission's action, it is urged that the evidence before the Commission shows that many of the appellants, in addition to their warehouse business, are engaged in other business enterprises which are not within the regulatory jurisdiction of the Public Utilities Commission and that the evidence is not sufficient to enable the Commission to determine what items of expense are properly chargeable against the income of the appellants in their business as warehousemen, and that for that reason the Commission is unable to determine whether the increased rates sought are justified. The Commission also apparently holds that the various systems of bookkeeping employed by the appellants are such that the required evidence is not available. For these reasons the Commissions declines to take final action upon the rates requested at the present time, or until a uniform system of accounting is established.

The appellants concede that under the law, sec. 61-524, I. C., the Commission has the power to require and to establish a uniform system of accounting for warehousemen. However, their contention here is that denying them any relief while the accounting system is being established is arbitrary and a denial of their rights. They argue that the Commission has had the power and authority to establish such a system of accounts since the present law was enacted in 1913, and that the fact that no such system has been established heretofore is the fault of the Commission and is not chargeable to them, and that until such a system is established by the Commission they are entitled to have fair rates fixed on the basis of the best evidence presently available. They also urge that it may take as much as a year to establish such a system of accounts and an additional year before the required evidence will be available from the operation of the new system, and that in the meantime they are deprived of a rate which will yield them a fair return. Nothing appears in the findings, conclusions or orders of the Commission to suggest what time will elapse before the desired accounting system is established except the words, "that the Commission proceed forthwith to promulgate and establish. * * *" There is no indication in the record of how long it may take to accomplish this purpose nor how long such a system may be required to be in operation and effect before it will yield sufficient evidence to enable the Commission to determine what "expenses and revenues" are "incident to public uses on the one hand and

private uses on the other," and thus enable the Commission to fix a rate that is fair and reasonable. The contemplated uniform system of accounting is undoubtedly desirable and will prove of considerable assistance and benefit to the Commission, warehousemen and the public concerned. But it is obvious that considerable time will elapse before the system shall have been in operation a sufficient length of time to accomplish the objects sought by the Commission. In the meantime, warehousemen are entitled to a hearing and determination on the question of whether or not the existing rates are unreasonable and confiscatory, and this must be done from the best evidence now available. That this can be done must be apparent from the fact that rates have been fixed at different times during the past thirty-five years, the last time in 1942, upon the basis of evidence afforded by accounting systems not materially differing from those now in use by appellants. Attention is called to the fact that under the law the Commission has the power to compel the production of papers, books, accounts and documents of public utilities, secs. 61-602 and 61-603, I.C., and either directly or through an authorized officer to inspect the accounts, books, papers and documents of any public utility. Sec. 61-610, I.C. Under these statutes, and others providing its broad regulatory powers and its power to prescribe systems of accounts it could have required the appellants to reconcile the differences in the accounts presented by them in support of their pe-

titions. And it could have required them to justify the expenses charged against income from their warehouse business. Further, upon a rehearing it could have afforded them an opportunity to thus reconcile their accounts and to justify the claimed expense items. But it could not deny them their right to a decision, upon the sole ground of the want or absence of a uniform system of accounts, which it is solely within the power of the Commission itself to establish. Sec. 61-524, I.C.

It is apparent that the ruling of the Commission in this case is final and conclusive as to any rights which the appellants may have during the interim contemplated for the establishment of uniform accounts and a further ruling based thereon. The situation is clearly distinguishable from that obtaining in Capital Water Company v. Public Utilities Commission, supra. We, therefore, hold that the orders concerned here are appealable.

█ As to the reasonableness of existing rates, the pertinent evidence consists almost entirely of that offered by the appellants and is to the effect that they are operating their warehouse business at a loss. The Commission complains that part of the segregation which the appellants make between the expenses and revenues emanating from public use and those emanating from private use are based upon estimates, while appellants contend that they have resorted to estimates only as to such items as are not susceptible of a more accurate segregation,

and that the estimates they have made have not been challenged. The general rule is that where more accurate information is unavailable estimates should be considered. Boise Artesian Water Co. v. Public Utilities Commission, 40 Idaho 690, 707, 236 P. 525; State of Missouri ex rel. Southwestern Bell Tel. Co. v. Public Service Commission, 262 U.S. 276, 43 S.Ct. 544, 67 L.Ed. 981, 31 A.L.R. 807; Ohio Utilities Co. v. Public Utilities Commission, 267 U.S. 359, 45 S.Ct. 259, 69 L.Ed. 656.

The testimony offered by the individual protestants is to the general effect that the appellants are making a profit from their over-all operations; that if they are losing money in their warehouse business it is made up and a net profit is realized from their other business activities in which their warehouses, equipment and personnel are employed. This is not a proper basis for rate making. The appellants are entitled to a reasonable return upon their investment, used and useful in the public service, from their warehousing operations, regardless of what income or profits they may be making in the meantime from other business activities which are not subject to regulation by the Commission. Smyth v. Ames, 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819; Chicago, Milwaukee & St. Paul Railway Company v. Public Utilities Commission of Idaho, 274 U.S. 344, 47 S.Ct. 604, 71 L.Ed. 1085.

So that, until the Commission is able to obtain a more accurate segregation of the revenues and expenses of warehousing from that attributable to private business of the appellants by the proposed uniform system of accounts, it must procure and act upon the most accurate segregation which can be had from existing facts and records.

Appellants assign as error the Commission's refusal to receive evidence of rates existing for similar service in that part of the state of Washington adjacent to the area where appellants operate and where existing conditions are similar. The Idaho Commission has recognized that where conditions are similar comparisons may be considered. Teton Coal Company v. O. S. L. Railroad Co., Public Utilities Reports 1925-B 99. See State ex rel. Watts Engineering Co. v. Public Service Commission, 269 Mo. 525, 191 S.W. 412, Ann. Cas. 1917E, 786.

Appellants also complain of the refusal of the Commission to receive evidence of the value of wheat. It is evident that the value of the commodity to be stored has an important bearing upon the value of the storage service to the owner of the commodity, and for that reason should be considered as one of the elements involved in rate making. Mountain View Rural Tel. Co. v. Interstate Tel. Co., 55 Idaho 514, 46 P.2d 723. This becomes apparent if we consider the converse of the present situation. Instead of the present value of wheat, if we assumed that it were as low in price as it has been in former times, it might be economically unprofitable for

the producer to store it even at rates considerably below those now existing. Under such circumstances, the warehouseman would be required to accept a smaller return for his services.

█ Generally speaking, the law governing the Commission contemplates a rule of liberality in the reception of evidence. Sec. 61-601, I.C.

The orders appealed from are reversed and the cause is remanded to the Public Utilities Commission with direction to grant a rehearing. No costs allowed.

HOLDEN, C. J., and PORTER and KEETON, JJ., and SUTPHEN, D. J., concur.